UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

BROADCAST MUSIC, INC.; WARNER–
TAMERLANE PUBLISHING CORP.; RICK'S
MUSIC, INC.; STEVE GREENBERG an
individual d/b/a RED SEA SONGS; SONY/ATV
SONGS LLC; BERNARD EDWARDS
COMPANY LLC; ESTATE OF MAURICE
ERNEST GIBB and ROBIN GIBB d/b/a GIBB
BROTHERS MUSIC; BARRY ALAN GIBB, an
individual d/b/a CROMPTON SONGS; MJ
PUBLISHING TRUST d/b/a MIJAC MUSIC;
SUMAC MUSIC, a division of LOVE-ZAGER
PRODUCTIONS INC.

      Plaintiffs,

    - against -

120 BAY STREET CORP. d/b/a CARGO CAFÉ
and DAVID RABIN, individually,

      Defendants.
----------------------------------------------------------------X

**MEMORANDUM
DECISION AND ORDER**

09 Civ. 5056 (BMC)

**COGAN**, District Judge.

Before me is plaintiffs' motion for default judgment and permanent injunction. For the reasons set forth below, the motion is granted.

## BACKGROUND

Plaintiffs brought this action against defendants, 120 Bay Street Corp. d/b/a Cargo Café and David Rabin, an officer of 120 Bay Street Corp., asserting seven claims of copyright infringement, pursuant to 17 U.S.C. § 101 et seq. Plaintiff Broadcast Music, Inc. ("BMI") is a New York corporation that has been granted the right to license the public performance rights in approximately 6.5 million copyrighted musical compositions. The remaining plaintiffs are the owners of the copyrights in the musical compositions at issue in this action.

Plaintiffs commenced this action by filing a Summons and Complaint on November 18, 2009, and serving defendants with a copy on November 25, 2009. Plaintiffs filed proof of service with the Court on December 10, 2009. Defendants have not answered or appeared and the time to do so has expired. On February 23, 2010, the Clerk of the Court entered default against the defendants pursuant to Fed. R. Civ. P. 55.

## DISCUSSION

### I. Damages

In light of defendants' default in this case, all of the well-pleaded allegations in plaintiffs' complaint pertaining to liability are deemed true. However, "[e]ven when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." Credit Lyonnais Sec., Inc. v. Alcantara, 183 F. 3d 151, 155 (2d Cir. 1999). "Rule 55(b)(2) provides that when granting a default judgment, if 'it is necessary to take account or to determine the amount of damages or to establish the truth of any averment by evidence . . . the court may conduct such hearings or order such references as it deems necessary and proper.'" Id. at 154 (quoting Fed. R. Civ. P. 55(b)(2)). The Second Circuit has held that as long as the district court "ensured that there was a basis for the damages specified in the default judgment," such as by relying on detailed affidavits and documentary evidence, it is not necessary for the court to hold a hearing. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (internal citations omitted).

Plaintiffs' counsel submitted an Affidavit of Lawrence E. Stevens, Assistant Vice President, General Licensing for BMI, in support of Plaintiffs' Motion for Default Judgment and Permanent Injunction. That affidavit exhibits copies of letters BMI sent to defendants from May

2002 through June 2009, notifying defendants that they are not authorized to publicly perform BMI licensed music; ordering defendants to cease unauthorized use of BMI licensed music; and providing defendants with an opportunity to enter into a licensing agreement with BMI to lawfully use such music. In addition, plaintiffs have included a Certified Infringement Report, which details the results of BMI's investigation of the Cargo Café in April 2009. Finally, plaintiffs have included documentation identifying the music compositions that were infringed; BMI's estimated lost license fees; and documentation supporting plaintiffs' request for costs and attorney's fees.

Plaintiffs seek an award of $4,207.50 for each of the seven claims of infringement, for a total of $29,452.50. Plaintiffs indicate that the current annual license fee is approximately $1,530.00, and that based on defendants' willful infringement, they are seeking damages that are approximately three times the amount plaintiffs would have received in licensing fees if defendants had been properly licensed.

Courts are given broad discretion to award statutory damages within the range of $750 to $30,000 per infringement. 17 U.S.C. § 504(c)(1); Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1116 (2d Cir. 1986). In determining the appropriate award, this Court may consider such factors as "the expenses saved and profits reaped by the defendants, the revenues lost by the plaintiffs, the value of the copyright, the deterrent effect of the award on other potential infringers, and factors relating to individual culpability." Jett v. Ficara, No. 04-Civ-9466, 2007 WL 2197834, at *7 (S.D.N.Y. June 29, 2007) (citing Fitzgerald, 807 F.2d at 1117).

Moreover, in order to put infringers "on notice that it costs less to obey the copyright laws than to violate them," Broadcast Music, Inc. v. R Bar of Manhattan, Inc., 919 F. Supp. 656, 660 (S.D.N.Y. 1996) (internal quotation omitted), courts frequently impose statutory damages in

an amount more than double unpaid licensing fees where the infringement was not innocent, see, e.g., id. (awarding damages five times the unpaid licensing fees); Broadcast Music, Inc. v. Melody Fair Enterprises, Inc., Nos. CIV-89-70C, CIV-89-1223C, 1990 WL 284743, at *4 (W.D.N.Y. July 31, 1990) (awarding damages four times the unpaid licensing fees).

Under § 504(c)(2), the court has discretion to increase the award to $150,000 where it finds that the infringement was committed "willfully." 17 U.S.C. § 504(c)(2). In order to establish willfulness, plaintiffs must prove that defendants had actual knowledge that they were infringing plaintiffs' copyrights, or acted with a reckless disregard of a strong probability that the conduct constituted infringement. Island Software and Computer Serv., Inc., v. Microsoft Corp., 413 F.3d 257, 263 (2d Cir. 2005). A defendant's knowledge "need not be proven directly but may be inferred from the defendant's conduct." N.A.S. Import, Corp. v. Chenson Enters., Inc., 968 F.2d 250, 252 (2d Cir. 1992). The Court infers such willful knowledge in this case from defendants' failure to defend this action. See Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003).

This Court finds that plaintiffs' allegations are sufficient to warrant a finding of willful infringement. Defendants' willfulness can be established by both their default in this action, as well as their actual knowledge of the infringement. Since 2002, plaintiffs' have sent more than 30 letters and made more than 80 phone calls to defendants to notify them of their infringement and to have them either enter into a licensing agreement with BMI, or cease use of BMI licensed music. In addition, representatives of BMI spoke with defendant David Rabin on seven occasions and notified him directly of the infringement. Nevertheless, all of plaintiffs' requests were ignored. In light of defendants' willful infringement, I find an award of damages that is approximately three times the annual license fee to be reasonable.

Accordingly, I find plaintiffs' submissions to be sufficient evidence to form the basis for an award of damages against defendants, jointly and severally, in the amount of $29,452.50. I also find that plaintiffs' requested attorney's fees of $3,539.00, pursuant to 17 U.S.C. § 505, are reasonable considering the nature of this case and the time expended.

## II. Injunctive Relief

Plaintiffs have also requested, pursuant to 17 U.S.C. § 502, that the Court permanently enjoin defendants, their agents, servants, employees, and all persons acting under their permission and authority from infringing, in any manner, the copyrighted musical compositions licensed by BMI.

The Court may issue an injunction on a motion for default judgment upon a showing by the moving party that it is entitled to injunctive relief under the applicable statute, and that it meets the prerequisites for the issuance of an injunction. Kingvision Pay-Per-View Ltd. v. Lalaleo, 429 F. Supp. 2d 506, 516 (E.D.N.Y. 2006) (internal quotation omitted). Under the Copyright Act, a court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Permanent injunctions are appropriate when infringement has been established and there is a substantial likelihood of future violations. Boisson v. Banian Ltd., 280 F. Supp. 2d 10, 15 (E.D.N.Y. 2003). In actions for copyright infringement, the Second Circuit has repeatedly held that once a prima facie case has been made, irreparable harm is generally presumed. Random House, Inc. v. Rosetta Books LLC, 283 F.3d 490, 491 (2d Cir. 2002).

Plaintiffs have established liability by virtue of defendants' default. They have also sufficiently established a threat of continuing infringement, as defendants have refused to stop infringing their copyrights, despite being repeatedly put on notice of their infringement since

2002, and thus have demonstrated irreparable injury. Moreover, nothing in the facts indicates that defendants have ceased this infringing activity. Therefore, this Court finds a permanent injunction is warranted in this case.

## CONCLUSION

The motion for a default judgment and permanent injunction is granted. The Court will separately enter a Default Judgment and Final Injunction.

**SO ORDERED.**

                                                s/Brian M. Cogan
                                                      U.S.D.J.

Dated: Brooklyn, New York
       April 1, 2010